IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID KING,	No. CIV S-07-2787-FCD-CMK-P

     Plaintiff,

  vs.	ORDER

T.M. PEBLER,

     Defendant.

_____/

     Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is plaintiff's first amended complaint (Doc. 10), filed on February 20, 2008. The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. § 1915A(a).

/ / /

/ / /

/ / /

/ / /

/ / /

## I.  BACKGROUND

On December 28, 2007, the court dismissed plaintiff's original complaint with leave to amend.  The court described plaintiff's claims as follows:

> Plaintiff names correctional officer T.M. Pebler as the only defendant to this action.  Plaintiff seeks monetary damages for alleged humiliation and harassment.  Specifically, plaintiff asserts:
>
>> On Dec. 7, 2005, Officer Pebler informed me that in order to receive my property I would have to cut my hair.  This took place in the R&R at Folsom Prison.  Officer Pebler was not enforcing any grooming standards because I was in compliance.
>
> Included among the documentation attached to the instant complaint are records from a civil action plaintiff filed in state court against defendant Pebler on the same claim.  In particular, plaintiff attaches a copy of the state court complaint.  As to defendant Pebler, plaintiff alleged:
>
>> . . . C/o Pebler, the property officer, observed [plaintiff and another correctional officer] talking about my hair.  After I got my I.D. card from C/o Ide, I asked Officer Pebler if I could get my property.  At first he did not answer so I asked again if I could get my property.  C/o Pebler informed me, in order to get my property, I would have to cut the back of my head.  I went out to building #2 right outside the R&R and got the hair cut.  I went back into R&R and told C/o Pebler that I cut the hair and could I get my property now.  C/o Pebler stated t me "Now that looks more aerodynamic," and he gave me my property.
>
> Plaintiff further alleged:
>
>> . . . Plaintiff contends that the only reason Officer Pebler had for his actions was to harass and humiliate me because of his dislike for the haircut.  As a result of C/o Pebler's actions, I was threatened with bodily injury if I did not retaliate against him for making me cut my hair.  As I was leaving R&R with my property, I was approached by an inmate who said that "I better do something for the C/o punking me." in the prison system, when there is a perceived weakness, the aggressive inmates will prey upon the weak inmates and extort them or worse.  I was able to convince the inmate that my retaliation would be through the court, hence this suit.  The actions of C/o Pebler was especially humiliating to me because I suffer from male patterned baldness and my way of keeping a sense of self-esteem is to still grow hair in the back because the front has

|   |   |
|---|---|
| 1 | gone bald. |
| 2 | If it please the court, I would also like to state that the haircut, although humiliating to me, is not the gist of my argument. I have been nervous and walking around the prison in a state of wondering if I will be attacked behind me for not retaliating against C/o Pebler. I feel that C/o Pebler knew or should have known that the consequences of his actions would put me in danger of physical harm. |

That prior action proceeded in the Sacramento County Superior Court as case no. 06AM08973. The Superior Court sustained defendant's demurrer on May 8, 2007, and dismissed the action because plaintiff had not complied with the requirements of the California Tort Claims Act.

As further revealed by the documents attached to plaintiff's § 1983 complaint, plaintiff's inmate grievance sought to have defendant Pebler reprimanded. In his grievance, plaintiff alleged that defendant Pebler humiliated him and displayed a willful course of harassment. The prison responses to his grievances indicate that plaintiff was provided with his property and never charged with any rules violation in connection with his encounter with defendant Pebler in December 2005.

The court stated that plaintiff appeared to be asserting claims based on verbal harassment and humiliation and/or disregard for a risk to his safety.

## II. DISCUSSION

In the first amended complaint, plaintiff still names Pebler as the only defendant.[1] In his amended complaint, plaintiff sets forth essentially the same factual allegations and specifically states that he is asserting claims based on verbal harassment and humiliation safety. He also, for the first time, asserts an equal protection claim based on alleged discrimination.

/ / /

/ / /

/ / /

/ / /

---

[1] While plaintiff states that he wants to add as a defendant the officer in charge on the date of the incident with Pebler, he does not provide the court with this individual's name. Plaintiff make seek leave to amend the complaint at a later date if he learns the officer's name.

<u>Verbal Harassment and Humiliation</u>

Addressing the allegations relating to harassment and humiliation in the original complaint, the court stated:

> Allegations of verbal harassment do not state a claim under the Eighth Amendment unless it is alleged that the harassment was "calculated to . . . cause [the prisoner] psychological damage." <u>Oltarzewski v. Ruggiero</u>, 830 F.2d 136, 139 (9th Cir. 1987); <u>see also</u> <u>Keenan v. Hall</u>, 83 F.3d 1083, 1092 (9th Cir. 1996), <u>amended by</u> 135 F.3d 1318 (9th Cir. 1998). The possible basis of a valid harassment claim in this case stems from plaintiff's allegation that plaintiff's self-esteem, which he alleges to be diminished due to male pattern baldness, is enhanced by growing his hair out at the back of his head, and that defendant Pebler's conduct in making him cut his hair denied him this source of enhancement. As currently alleged, however, plaintiff does not state a cognizable claim because he does not allege that defendant had any actual knowledge of his self-esteem issues and, therefore, that defendant's conduct was calculated to cause plaintiff to suffer psychological damage.

In the first amended complaint, plaintiff now alleges that "Officer Pebler had knowledge of why I grow my hair like that because he overheard our conversation." According to plaintiff, he was having a conversation with another correctional officer concerning how they both "suffer" from male pattern baldness and that he told the officer he grew his hair out in back to "compensate" for a bald spot. Based on the words "suffer" and "compensate," and reading the complaint liberally, the court concludes that plaintiff has minimally alleged that defendant Pebler knew, based on overhearing this conversation, that plaintiff had self-esteem issues related to baldness.

<u>Safety</u>

Regarding a possible safety claim asserted in the original complaint, the court stated:

> Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. <u>See</u> <u>Hoptowit v. Ray</u>, 682 F.2d 1237, 1250-51 (9th Cir. 1982); <u>Farmer</u>, 511 U.S. at 833. To demonstrate that a prison official was deliberately indifferent to a safety risk, the prisoner must establish that the official knew of the risk but disregarded it. <u>See</u> <u>Farmer</u>, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. <u>See</u> <u>Wallis v. Baldwin</u>, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. <u>See</u> <u>Farmer</u>, 511

4

U.S. at 844.

As with plaintiff's possible harassment claim, plaintiff has not stated a cognizable safety claim because he has not alleged that defendant knew of the risk associated with not responding to being "punked." The closest plaintiff comes is alleging that he feels that defendant knew or should have known of the safety risk. This, however, is insufficient to meet the requirement that defendant actually knew of the risk. Moreover, the court does not find that the alleged risk from being "punked" is so obvious as to meet this requirement.

Plaintiff alleges in the first amended complaint that defendant Pebler "knows that disrespecting, humiliating a prisoner [by an officer] leaves him in a position to be preyed upon." He adds: "Although this is not a written rule, it does however exist and every officer is aware of this." Again, reading the complaint liberally, the court finds that plaintiff minimally alleges that it is common knowledge among prisoners and correctional officers that failing to respond to being "punked" by an officer can subject an inmate to a safety risk.

### Equal Protection

Turning to plaintiff's new equal protection claim, he asserts that California law requires prison officials to treat inmates with respect and impartially. Plaintiff alleges that this rule was violated by defendant Pebler. Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to a legitimate state purpose. See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972). Prisoners are protected from invidious discrimination based on race. See Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Prisoners are also protected from intentional discrimination on the basis of their religion. See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997). Equal protection claims are not necessarily limited to racial and religious discrimination. See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008).

1    In order to state a § 1983 claim based on a violation of the Equal Protection
2  Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with
3  intentional discrimination against plaintiff, or against a class of inmates which included plaintiff,
4  and that such conduct did not relate to a legitimate penological purpose.  See Village of
5  Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be
6  brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir.
7  2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v.
8  Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010
9  (9th Cir. 1985).  Here, plaintiff has alleged that he was treated differently from other inmates,
10 presumably because he has male pattern baldness.  Defendant Pebler's conduct may be subject to
11 at least  minimal constitutional scrutiny.

### III.  CONCLUSION

14   The first amended complaint appears to state a cognizable claim for relief
15 pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915A(b).  If the allegations are proven, plaintiff
16 has a reasonable opportunity to prevail on the merits of this action.  The court, therefore, finds
17 that service is appropriate and will direct service by the U.S. Marshal without pre-payment of
18 costs.  Plaintiff is informed, however, that this action cannot proceed further until plaintiff
19 complies with this order.  Plaintiff is warned that failure to comply with this order may result in
20 dismissal of the action.  See Local Rule 11-110.
21   Accordingly, IT IS HEREBY ORDERED that:
22   1.  The court authorizes service on the following defendant(s):
23        PEBLER;
24   2.  The Clerk of the Court shall send plaintiff one USM-285 form for each
25 defendant identified above, one summons, an instruction sheet, and a copy of the first amended
26 complaint; and

3.  Within 30 days of the date of service of this order, plaintiff shall complete the attached Notice of Submission of Documents and submit the following documents to the court:

    a.    The completed Notice of Submission of Documents;

    b.    One completed summons;

    c.    Once completed USM-285 form(s); and

    d.    Two copies of the endorsed first amended complaint filed.

DATED: April 4, 2008

                                            **CRAIG M. KELLISON**
                                            UNITED STATES MAGISTRATE JUDGE

7

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF CALIFORNIA**

DAVID KING,  No. CIV S-07-2787-FCD-CMK-P
    Plaintiff,
  vs.
T.M. PEBLER,
    Defendant.
_____ /

<u>NOTICE OF SUBMISSION OF DOCUMENTS</u>

Plaintiff hereby submits the following documents in compliance with the court's order:

    <u>  1  </u>    completed summons form;
    <u>      </u>    completed USM-285 form(s); and
    <u>      </u>    copies of the first amended complaint filed on.

DATED: _____                         _____
                                                          Plaintiff