IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID KING,                              No. CIV S-07-2787-FCD-CMK-P

       Plaintiff,

     vs.                                  FINDINGS AND RECOMMENDATIONS

T.M. PEBLER,

       Defendant.

_____/

       Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant's motion to dismiss (Doc. 16).

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1

## I. BACKGROUND

This action was initiated with plaintiff's original complaint filed on December 26, 2007. In dismissing the original complaint with leave to amend, the court described plaintiff's allegations as follows:

> Plaintiff names correctional officer T.M. Pebler as the only defendant to this action. Plaintiff seeks monetary damages for alleged humiliation and harassment. Specifically, plaintiff asserts:
>
>> On Dec. 7, 2005, Officer Pebler informed me that in order to receive my property I would have to cut my hair. This took place in the R&R at Folsom Prison. Officer Pebler was not enforcing any grooming standards because I was in compliance.
>
> Included among the documentation attached to the instant complaint are records from a civil action plaintiff filed in state court against defendant Pebler on the same claim. In particular, plaintiff attaches a copy of the state court complaint. As to defendant Pebler, plaintiff alleged:
>
>> . . . C/o Pebler, the property officer, observed [plaintiff and another correctional officer] talking about my hair. After I got my I.D. card from C/o Ide, I asked Officer Pebler if I could get my property. At first he did not answer so I asked again if I could get my property. C/o Pebler informed me, in order to get my property, I would have to cut the back of my head. I went out to building #2 right outside the R&R and got the hair cut. I went back into R&R and told C/o Pebler that I cut the hair and could I get my property now. C/o Pebler stated t me "Now that looks more aerodynamic," and he gave me my property.
>
> Plaintiff further alleged:
>
>> . . . Plaintiff contends that the only reason Officer Pebler had for his actions was to harass and humiliate me because of his dislike for the haircut. As a result of C/o Pebler's actions, I was threatened with bodily injury if I did not retaliate against him for making me cut my hair. As I was leaving R&R with my property, I was approached by an inmate who said that "I better do something for the C/o punking me." in the prison system, when there is a perceived weakness, the aggressive inmates will prey upon the weak inmates and extort them or worse. I was able to convince the inmate that my retaliation would be through the court, hence this suit. The actions of C/o Pebler was especially humiliating to me because I suffer from male

> patterned baldness and my way of keeping a sense of self-esteem is to still grow hair in the back because the front has gone bald.
>
> If it please the court, I would also like to state that the haircut, although humiliating to me, is not the gist of my argument. I have been nervous and walking around the prison in a state of wondering if I will be attacked behind me not retaliating against C/o Pebler. I feel that C/o Pebler knew or should have known that the consequences of his actions would put me in danger of physical harm.

That prior action proceeded in the Sacramento County Superior Court as case no. 06AM08973. The Superior Court sustained defendant's demurrer on May 8, 2007, and dismissed the action because plaintiff had not complied with the requirements of the California Tort Claims Act.

As further revealed by the documents attached to plaintiff's § 1983 complaint, plaintiff's inmate grievance sought to have defendant Pebler reprimanded. In his grievance, plaintiff alleged that defendant Pebler humiliated him and displayed a willful course of harassment. The prison responses to his grievances indicate that plaintiff was provided with his property and never charged with any rules violation in connection with his encounter with defendant Pebler in December 2005.

The court stated that plaintiff appeared to be asserting claims based on verbal harassment and humiliation and/or disregard for a risk to his safety, but dismissed the complaint with leave to amend to allow plaintiff to clarify his allegations.

In the first amended complaint, plaintiff still names Pebler as the only defendant. In his amended complaint, plaintiff sets forth essentially the same factual allegations and specifically states that he is asserting claims based on verbal harassment and humiliation, as well as safety. He also, for the first time, asserts an equal protection claim based on alleged discrimination. On April 7, 2008, the court issued an order determining that the complaint was appropriate for service on defendant Pebler.

/ / /

/ / /

/ / /

/ / /

/ / /

3

## II. STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 127 S.Ct. 2197 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct.1955, 1964-65 (2007). Allegations of specific facts are not necessary so long as the statement of facts gives the defendant fair notice of what the claim is and the grounds upon which it rests. See Erickson, 127 S.Ct. at 2197.

To determine whether a complaint states a claim upon which relief can be granted, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

///

Under these standards, a statute of limitations defense may be raised in a motion to dismiss.  Finally, leave to amend must be granted ". . . [u]nless it is absolutely clear that no amendment can cure the defects."  Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III.  DISCUSSION

Defendant argues that plaintiff fails to state any claim upon which relief can be granted.  He also argues that, even if plaintiff does state cognizable claims, he is nonetheless entitled to qualified immunity.

**A.     Failure to State a Claim**

1.     Verbal Harassment and Humiliation

Defendant begins with the premise that plaintiff can state a § 1983 claim based on verbal harassment only in extraordinary circumstances and argues that the facts of this case do not meet this standard.  Specifically, defendant argues:

> Significantly, Plaintiff does not allege that Defendant Pebler used any vulgar or offensive language, laughed at or mocked him, or made any reference to Plaintiff's male-pattern baldness.  When the alleged conduct of Defendant Pebler is weighed against the conduct of the defendants in the cases referenced [in defendant's motion], it is clear that as a matter of fact and law, Defendant Pebler's conduct does not rise to the objective or subjective components necessary to establish an Eighth Amendment violation.

Addressing plaintiff's claim based on harassment and humiliation, the court has stated:

> Allegations of verbal harassment do not state a claim under the Eighth Amendment unless it is alleged that the harassment was "calculated to . . . cause [the prisoner] psychological damage." Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987); see also Keenan v. Hall, 83 F.3d 1083, 1092 (9th Cir. 1996), amended by 135 F.3d 1318 (9th Cir. 1998).  The possible basis of a valid harassment claim in this case stems from plaintiff's allegation that plaintiff's self-esteem, which he alleges to be diminished due to male pattern baldness, is enhanced by growing his hair out at the back of his head, and that defendant Pebler's conduct in making him cut his hair denied him this source of enhancement. . . .

5

In making his argument, defendant correctly notes that Keenan also requires that the defendant's conduct or comments be "unusually gross, even for a prison setting." 83 F.3d at 1092. He concludes that making plaintiff cut his hair cannot, as a matter of law, be conduct which is sufficiently gross to provide the basis of a claim.

The court agrees. Even if defendant's conduct was calculated to humiliate plaintiff by making him cut his hair, it was not sufficiently egregious. Plaintiff has not pointed to any facts, either in the amended complaint or in his opposition to defendant's motion, which would indicate that defendant's conduct was unusually gross. In reaching this conclusion, the court notes cases cited by defendant in which conduct worse than that attributed to defendant was not sufficient to support a harassment claim. See Austin v. Williams, 367 F.3d 1167 (9th Cir. 2004) (discussing prison guard's sexually explicit language and exposing genitals to prisoner from glass-enclosed control booth); Somers v. Thurman, 109 F.3d 614 (9th Cir. 1997) (discussing female guards who pointed and joked among themselves while observing prisoner showering or while conducting body cavity search); McDonald v. Campbell, 2008 WL 802358 (E.D. Cal. 2008) (discussing prison guard's extremely crude sexual insults).

        2.    Safety

Defendant argues that plaintiff has not alleged facts sufficient to show that defendant's conduct created a substantial risk of harm or that defendant had a culpable state of mind. In addressing this claim in the initial screening order dismissing the original complaint, the court stated:

> Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982); Farmer, 511 U.S. at 833. To demonstrate that a prison official was deliberately indifferent to a safety risk, the prisoner must establish that the official knew of the risk but disregarded it. See Farmer, 511 U.S. at 837. The very obviousness of the risk may suffice to establish the knowledge element. See Wallis v. Baldwin, 70 F.3d 1074, 1077 (9th Cir. 1995). Prison officials are not liable, however, if evidence is presented that they lacked knowledge of a safety risk. See Farmer, 511 U.S. at 844.

> As with plaintiff's possible harassment claim, plaintiff has not stated a cognizable safety claim because he has not alleged that defendant knew of the risk associated with not responding to being "punked." The closest plaintiff comes is alleging that he feels that defendant knew or should have known of the safety risk. This, however, is insufficient to meet the requirement that defendant actually knew of the risk. Moreover, the court does not find that the alleged risk from being "punked" is so obvious as to meet this requirement.

Regarding this claim as presented in the first amended complaint, the court stated:

> Plaintiff alleges in the first amended complaint that defendant Pebler "knows that disrespecting, humiliating a prisoner [by an officer] leaves him in a position to be preyed upon." He adds: "Although this is not a written rule, it does however exist and every officer is aware of this." Again, reading the complaint liberally, the court finds that plaintiff minimally alleges that it is common knowledge among prisoners and correctional officers that failing to respond to being "punked" by an officer can subject an inmate to a safety risk.

The court agrees with defendant that plaintiff cannot state a safety claim. The basis of plaintiff's safety claim is the risk of attack by other inmates resulting from plaintiff's failure to respond to defendant's conduct in making him cut his hair. Accepting that defendant Pebler knew that failing to respond to being "punked" created a safety risk, as discussed above, defendant's conduct cannot be considered sufficiently serious to trigger this awareness. In other words, defendant Pebler did not "punk" plaintiff. Therefore, defendant could not have known that his conduct gave rise to a safety risk and plaintiff cannot establish a conscious disregard for plaintiff's safety.

### 3. Equal Protection

Defendant argues that plaintiff fails to allege facts showing that he was treated differently than similarly situated inmates when plaintiff was directed to cut his hair. Regarding this claim, the court previously stated:

> Turning to plaintiff's new equal protection claim, he asserts that California law requires prison officials to treat inmates with respect and impartially. Plaintiff alleges that this rule was violated by defendant Pebler. Equal protection claims arise when a charge is made that similarly situated individuals are treated differently without a rational relationship to

a legitimate state purpose.  See San Antonio School District v. Rodriguez, 411 U.S. 1 (1972).  Prisoners are protected from invidious discrimination based on race.  See Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  Prisoners are also protected from intentional discrimination on the basis of their religion.  See Freeman v. Arpaio, 125 F.3d 732, 737 (9th Cir. 1997).  Equal protection claims are not necessarily limited to racial and religious discrimination.  See Lee v. City of Los Angeles, 250 F.3d 668, 686-67 (9th Cir. 2001) (applying minimal scrutiny to equal protection claim by a disabled plaintiff because the disabled do not constitute a suspect class) see also Tatum v. Pliler, 2007 WL 1720165 (E.D. Cal. 2007) (applying minimal scrutiny to equal protection claim based on denial of in-cell meals where no allegation of race-based discrimination was made); Hightower v. Schwarzenegger, 2007 WL 732555 (E.D. Cal. March 19, 2008).

In order to state a § 1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must allege that defendants acted with intentional discrimination against plaintiff, or against a class of inmates which included plaintiff, and that such conduct did not relate to a legitimate penological purpose.  See Village of Willowbrook v. Olech, 528 U.S. 562, 564 (2000) (holding that equal protection claims may be brought by a "class of one"); Reese v. Jefferson Sch. Dist. No. 14J, 208 F.3d 736, 740 (9th Cir. 2000); Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998); Federal Deposit Ins. Corp. v. Henderson, 940 F.2d 465, 471 (9th Cir. 1991); Lowe v. City of Monrovia, 775 F.2d 998, 1010 (9th Cir. 1985).  Here, plaintiff has alleged that he was treated differently from other inmates, presumably because he has male pattern baldness.  Defendant Pebler's conduct may be subject to at least  minimal constitutional scrutiny.

In his motion to dismiss, defendant argues:

> [E]ven though Plaintiff makes the legal conclusion that Defendant Pebler's conduct was discriminatory and intentional, interestingly, the amended complaint is silent on the appearance of the other inmates who were not asked to cut their hair (such as whether the other inmates were balding or had long hair that violated the grooming standard applied at the time), or whether Plaintiff observed any other inmates with male-pattern baldness being asked by Defendant Pebler to cut their hair.  Even if during the time period that Plaintiff was at the R&R, no other inmates were asked to cut their hair, this does not rise to the level of demonstrating that Defendant Pebler acted in a discriminatory and intentional manner. . . .

Defendant's argument is unpersuasive.  Specifically, while it does not appear that plaintiff is aware of any facts which would show that, at the time defendant ordered him to cut his hair, he was a member of a class of similarly balding inmates, equal protection claims may be brought by a "class of one."  See Village of Willowbrook, 528 U.S. at 564 (2000).  Moreover, read more broadly, plaintiff is clearly a member of a class consisting of inmates who have been

8

directed to cut their hair for any number of reasons. The question is whether defendant Pebler ordered plaintiff to cut his hair because he was balding, thereby singling plaintiff out.

### B. Qualified Immunity

Defendant argues that, even if plaintiff states cognizable claims, he is entitled to qualified immunity as to each claim. Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the

court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." <u>Jackson v. City of Bremerton</u>, 268 F.3d 646, 651 (9th Cir. 2001); <u>see also</u> <u>Saucier</u>, 533 U.S. at 205.

The first two steps in the qualified immunity analysis involve purely legal questions. See <u>Trevino v. Gates</u>, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct. See <u>Neely v. Feinstein</u>, 50 F.3d 1502, 1509 (9th Cir. 1995). In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. <u>Martinez v. Stanford</u>, 323 F.3d 1178, 1184 (9th Cir. 2003).

Defendant argues:

> . . .[T]he relevant inquiry in this case is whether Defendant Pebler could have reasonably believed that asking Plaintiff to cut his hair was unlawful. The court is to look at the situation as reasonable officials in Defendant Pebler's position could have perceived it. *Saucier*, 533 U.S. at 205. Here, reasonable officials faced with the same knowledge and circumstances as Defendant Pebler could have reasonably believed that it was not unlawful to request Plaintiff cut his hair and Defendant Pebler is entitled to qualified immunity.

The court agrees that defendant is entitled to qualified immunity. As to plaintiff's harassment and safety claims – which are based on the notion that defendant's conduct in asking plaintiff to cut his hair was unusually gross and/or constituted "punking" – the court concludes, as matter of law, that plaintiff cannot make out a constitutional violation. Therefore, defendant is also entitled to qualified immunity on these claims. As to plaintiff's equal protection claim, assuming that plaintiff has stated a cognizable claim, the court cannot say, as a matter of law, that such a claim is clearly established. In particular, the court is aware of no cases which have found that

individuals with male-pattern baldness are entitled to equal protection.  Thus, no reasonable officer who did what defendant Pebler did – ask a balding inmate to cut his hair – could have believed that his conduct violated the inmate's right to equal protection.

### IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that:

1. Defendant's motion to dismiss (Doc. 16) be granted;
2. This action be dismissed; and
3. The Clerk of the Court be directed to enter judgment and close this file.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 15, 2008

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE

11